## THE SWIFTARROW.

BROWN v. C. D. MALLORY & CO. et al.
No. 45.

District Court, E. D. Pennsylvania.
July 31, 1940.

Freedman & Goldstein, of Philadelphia, Pa., for plaintiff.

Krusen, Evans & Shaw, of Philadelphia, Pa., for defendants.

Before KIRKPATRICK, WELSH, KALODNER and BARD, District Judges.

KALODNER, District Judge.

This is an action in admiralty under Section 33 of the Merchant Marine Act of 1920 (commonly known as the Jones Act), 41 Stat. 1007, 46 U.S.C.A. § 688.

Section 688 provides (in part) that: "Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

The law is well settled that the benefits of the Jones Act are available not only on the law side but also on the admiralty side in an in personam action. See Panama Railway Co. v. Johnson, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748.

It is also well settled that in an action under the Jones Act, where its benefits are sought in a proceeding on the law side, that the respondent must be a resident of, or· have his principal place of business in, the district.[1]

The pleadings in the instant case present the issue: Are the venue provisions of the Jones Act applicable to·a proceeding in personam (by foreign attachment) in admiralty?

The issue stated has been considered in a number of cases in various jurisdictions with conflicting results.

In this jurisdiction it has been decided that the benefits of the Jones Act are available in an in personam action in admiralty, by foreign attachment, although the defendant neither resides in nor has his principal place of business in the district. See Eckert v. Socony-Vacuum Oil Co., D.C., 13 F.Supp. 342; Carr v. Union Sulphur Company[2]; Essigman v. Standard Oil Co.,[2] No. 29 of 1939, in Admiralty.

Similar rulings were made in other jurisdictions in the following cases: McDaniel v. Baker Sand & ·Gravel Co., D.C., 24 F.2d 987; Arthur v. Compagnie Generale Transatlantique, 5 Cir., 72 F.2d 662; McKola v. McCormick S. S. Co. et al., D.C., 24 F.Supp. 378.

[1] Leon v. United States Shipping Board Emergency Fleet Corp., D.C., 286 F. 681; Olafson v. Waterman S. S. Corp., D.C., 281 F. 194; Barrington v. Pacific S. S. Co., D.C., 282 F. 900; Caceres v. United States Shipping Board E. F. Corp., D.C., 299 F. 968; Atianza v. United States Shipping Board E. F. Corp., D.C., 299 F. 975; Leffellad v. Detroit & Cleveland Nav. Co., D.C., 16 F. 2d 1011; Davenport v. Sinclair Navigation Co., D.C., 30 F.Supp. 191.

[2] No opinion for publication.

A view contrary to that of the above-cited cases was taken in: Stein v. Standard Oil Co. of California, D.C., 36 F.2d 258; Bannon v. Seaboard Air Line R. Co. et al., D.C., 52 F.2d 886; The Pomona.[3]

Because of the conflict in the decisions cited, the court en banc took under consideration the question presented in the instant proceeding, which involves a libel in personam and in rem filed by a seaman based upon personal injuries allegedly sustained while employed on the respondent's vessel.

The libel alleges two causes of action: (1) For damages for personal injuries, based on the alleged negligence of the respondent; (2) for maintenance and cure.

The respondent is a Delaware corporation, and maintains its principal office in the City of Wilmington, and does not maintain any office within the Eastern District of Pennsylvania.

There were two services of the libel and two separate returns of service made by the United States marshal. Service of the libel so far as it proceeded in personam was made by writ of foreign attachment under which the Steamship "Swiftarrow" was attached within the Port of Philadelphia. The other service was in rem on the same vessel.

There was no service personally upon the respondent.

The respondent appeared de bene esse and moved to strike from the libel all causes of action and allegations based upon the Jones Act, on the ground that the latter provides that suits thereunder must be brought in the district in which the defendant employer resides or has his principal place of business; and that the respondent in the instant case was not a resident of, nor had its principal office in, this district. The respondent further contends that under the Jones Act jurisdiction cannot be acquired as to a non-resident respondent by foreign attachment.

The complete text of Section 33 of the Merchant Marine Act of 1920 (the Jones Act) follows: "Recovery for injury to or death of seaman. Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. *Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.* (Mar. 4, 1915, c. 153, § 20, 38 Stat. 1185; June 5, 1920, c. 250, § 33, 41 Stat. 1007.)" (Italics supplied.)

After full consideration of the Jones Act, and the decisions pro and con, we have reached the conclusion that in order that the benefits of the Jones Act be available to a libellant in admiralty, it is essential that the respondent either reside in or have his principal office in the district in which the action is instituted. The previously cited cases taking the opposite view (including, of course, the three cases in this district: Eckert v. Socony-Vacuum Oil Co., Carr v. Union Sulphur Company, and Essigman v. Standard Oil Co., supra) base their rulings upon a very evident misconstruction of the Supreme Court's opinion in Panama Railway Company v. Johnson, supra. This is plainly disclosed in the statement by the late Judge Dickinson in the Eckert case, supra, in which he stated that his own decision, and that in the McDaniel v. Baker Sand & Gravel Co. case, supra, were "based" upon Panama Railway Company v. Johnson. The McDaniel case was the first to rule upon the question either way.

A reading of the McDaniel case also indicates clearly that it relied on Panama Railway Company v. Johnson. For this reason it is important to analyze the Panama case.

First and foremost, it must be noted that the Panama case was an action on the law side, and not in admiralty—a fact not adverted to in the McDaniel case and the subsequent concurring opinions.

Two points were at issue in the Panama case: (1) The constitutionality of the Jones Act; and (2) the jurisdictional aspects of the Jones Act.

---

[3] No opinion for publication.

The court, in ruling that the Jones Act was constitutional, found that the benefits of the Jones Act were available not only on the law side but on the admiralty side.

A reading of the Panama decision not only negatives the interpretation given to it by the McDaniel and kindred cases, but is authority for the opposite view—namely, the view which we are now taking.

At the very beginning of the opinion in the Panama case—and this too seems to have escaped the attention of those courts adopting the view of the McDaniel case—there was a full discussion of what the Supreme Court described as the "venue" provision of the Jones Act; and, in doing so, significantly it made no distinction as to the effect of the venue provision between actions at law or in admiralty.

While, since the action in the Panama case was on the law side, it may be argued that the ruling of the court was not dispositive of the question of whether there must be compliance with the venue provisions of the Jones Act in an action on the admiralty side, nevertheless those who cite the Panama case as authority for the conclusion reached in the McDaniel case (in admiralty) are confronted with the fact that the Panama case was not on the admiralty side but on the law side.

In the Panama case the action was not brought in the district of the defendant's residence or principal office. The defendant appeared generally and demurred to the complaint. Later, the defendant objected on the ground that the defendant did not reside or have his principal office in the district where the suit was brought originally.

In disposing of this objection, the Supreme Court said (264 U.S. at page 383, 44 S.Ct. at page 392, 68 L.Ed. 748):

"The objection was not made at the outset on a special appearance, but after the defendant had appeared generally and demurred to the complaint. The court thought the objection went to the venue only and was waived by the general appearance; so the objection was overruled. [Johnson v. Panama R. Co., D.C.] 277 F. 859. Error is assigned on the ruling; but we think it was right."

This statement in the Panama decision clearly indicates that the Supreme Court recognized that there must be a compliance with the "venue" provisions of the Jones Act, or else on objection, seasonably made (i.e., by special appearance and objection) the action must be dismissed. We cannot see how any other conclusion can be reached, in view of this statement by the Supreme Court.

Again, it must be emphasized that the Supreme Court, in the Panama case, treated the requirement as to the defendant's residence or place of business in the district as a "venue" provision. Referring to the provision of the Jones Act that "Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located", the Supreme Court specifically stated (264 U.S. at pages 384-385, 44 S.Ct. at page 393, 68 L.Ed. 748):

"* * * as a general rule, where existing legislation on a particular subject has been systematically revised and restated in a comprehensive general statute, such as the Judicial Code, subsequent enactments touching that subject are to be construed and applied in harmony with the general statute, save as they clearly manifest a different purpose. An intention to depart from a course or policy thus deliberately settled is not lightly to be assumed. See United States v. Barnes, 222 U.S. 513, 520, 32 S.Ct. 117, 56 L.Ed. 291; United States v. Sweet, 245 U.S. 563, 572, 38 S.Ct. 193, 62 L.Ed. 473. The rule is specially pertinent here. Beginning with the Judiciary Act of 1789 * * *, Congress has pursued the policy of investing the federal courts—at first the Circuit Courts, and later the District Courts—with a general jurisdiction expressed in terms applicable alike to all of them and of regulating the venue by separate provisions designating the particular district in which a defendant shall be sued, such as the district of which he is an inhabitant or in which he has a place of business—the purpose of the venue provisions being to prevent defendants from being compelled to answer and defend in remote districts against their will. This policy was carried into the Judicial Code, and is shown in sections 24 and 51 [28 U.S.C.A. §§ 41, 112], one embodying general jurisdictional provisions applicable to rights under subsequent laws as well as laws then existing, and the other containing particular venue provisions. A reading of the provision now before us with those sections, and in the light of the policy carried into them, makes it reasonably certain that the provision is not intended to affect the general

jurisdiction of the District Courts as defined in section 24, but only to prescribe the venue for actions brought under the new act of which it is a part. No reason why it should have a different purpose has been suggested, nor do we perceive any. Its use of the word 'jurisdiction' seems inapt, and therefore not of special significance. The words 'shall be' are stressed by the defendant, but as they are found also in the earlier provisions, which uniformly have been held to relate to venue only, they afford no ground for a distinction.

"By a long line of decisions, recently reaffirmed, it is settled that such a provision merely confers on the defendant a personal privilege, which he may assert, or may waive, at his election, and does waive if, when sued in some other district, he enters a general appearance before or without claiming his privilege. Interior Construction & Improvement Co. v. Gibney, 160 U.S. 217, 16 S.Ct. 272, 40 L.Ed. 401; United States v. Hvoslef, 237 U.S. 1, 11, 35 S.Ct. 459, 59 L.Ed. 813, Ann.Cas. 1916A, 286; General Investment Co. v. Lake Shore & Michigan Southern R. Co., 260 U.S. 261, 272, 275, 43 S.Ct. 106, 67 L.Ed. 244; Lee v. Chesapeake & Ohio R. Co., 260 U.S. 653, 655, 43 S.Ct. 230, 67 L. Ed. 443."

It must be noted that nowhere in the Supreme Court's discussion of the venue provision does the court make any distinction between actions on the law side and actions on the admiralty side, and this in a case where the Court, in an extended discussion, specifically ruled that the benefits of the Jones Act are available in admiralty.

There is no justification for the contention that the venue provision of the Jones Act is totally inapplicable in an action on the admiralty side, because in suits in admiralty, generally, there are no venue restrictions. The proponents of the view taken in the McDaniel case have argued that since the Supreme Court ruled that the benefits of the Jones Act are available on the admiralty side, that once an action is brought under the Jones Act on the admiralty side, all the rules pertaining to admiralty jurisdiction become effective, including the sweeping venue rules which permit suits to be brought against respondents irrespective of whether they are residents of, or have their principal offices in, the district in which the libel is brought.

The McDaniel view is not only unsupported by the decision in the Panama case but, further, is absolutely at variance with the Supreme Court's decision in Plamals v. The Pinar Del Rio, 277 U.S. 151, 48 S.Ct. 457, 72 L.Ed. 827. It will be noted that the Pinar Del Rio case was decided by the Supreme Court on May 14, 1928— more than two months after the decision in the McDaniel case on March 10, 1928.

The Pinar Del Rio case ruled that there cannot be an in rem proceeding under the Jones Act on the admiralty side. The reasoning by which the Supreme Court reached the conclusion that only suits in personam can be brought under the Jones Act, *even in admiralty,* and also the actual result in the Pinar Del Rio case, are conclusively dispositive of the issue of the application of the venue requirements of the Jones Act to suits in admiralty. The Supreme Court reached the conclusion that an in rem proceeding could not be had under the Jones Act in view of the language of the venue provision of the Act, which it deemed applicable, *although the Pinar Del Rio case was on the admiralty side.*

Said the court (277 U.S. at pages 155–156, 48 S.Ct. at page 458, 72 L.Ed. 827):

*"Section 33 brings into our maritime law the provisions of certain statutes which define the liability of masters to employees originally intended to be enforced in actions at law. They imposed personal liability, and gave no lien of any kind. The statute which extended them to seamen expressly provided that the employer might be sued only in the district where he resides or has his principal office. This provision repels the suggestion that the intention was to subject the ship to in rem proceedings. Generally, at least proceedings of that nature may be brought wherever the ship happens to be.*

"The ordinary maritime privilege or lien, though adhering to the vessel, is a secret one, which may operate to the prejudice of general creditors and purchasers without notice, and is therefore stricti juris. It cannot be extended by construction, analogy, or inference. The Corsair, 145 U.S. 335, 347, 12 S.Ct. 949, 36 L.Ed. 727; The Albert Dumois, 177 U.S. 240, 257, 20 S.Ct. 595, 44 L.Ed. 751; Osaka Shosen Kaisha v. Pacific Export Lumber

Co., 260 U.S. 490, 499, 43 S.Ct. 172, 67 L.Ed. 364.

"Panama R. Co. v. Johnson, 264 U.S. 375, 386, 391, 44 S.Ct. 391, 393, 395 (68 L.Ed. 748), declares: Section 33 'is concerned with the relative rights and obligations of seamen and their employers arising out of personal injuries sustained by the former in the course of their employment.' 'The injured seaman is permitted, but not required, to proceed on the common-law side of the court.' 'The statute leaves the injured seaman free under the general law—sections 24 (par. 3) and 256 (par. 3) of the Judicial Code (28 U.S.C.A. §§ 41(3), 371 (3)—to assert his right of action under the new rules on the admiralty side of the court.'

"In the system from which these new rules come no lien exists to secure claims arising under them and, of course, no right to proceed in rem. We cannot conclude that the mere incorporation into the maritime law of the rights which they create to pursue the employer was enough to give rise to a lien against the vessel upon which the injury occurred. The section under consideration does not undertake to impose liability on the ship itself, but by positive words indicates a contrary purpose. *Seamen may invoke, at their election, the relief accorded by the old rules against the ship, or that provided by the new against the employer. But they may not have the benefit of both.*"

The reasoning and the ruling of the Supreme Court in the Pinar Del Rio case effectively and conclusively negatives the view that, once in admiralty, all of the characteristics and scope of a proceeding in admiralty apply to an action under the Jones Act on the admiralty side.

The conclusion reached in the Pinar Del Rio case cannot be explained away by the proponents of the view in the McDaniel case on the ground that the Jones Act merely offers to seamen an additional cause of action for damages superimposed upon the general admiralty jurisdiction of the federal courts, which remains totally unaffected in its application.

■ Ordinarily, in admiralty, a seaman could libel a ship in rem as a means of instituting a suit for indemnity for personal injuries. If the old admiralty jurisdictional remedies were unaffected by the Jones Act (under the McDaniel view) why could not the seaman seek damages in ad-miralty by libeling the ship in rem as was unsuccessfully attempted in the Pinar Del Rio case?

■ The answer is an obvious one. Congress, by enacting the Jones Act, made available to seamen injured in the course of their employment the benefits of existing statutes of the United States relating to personal injury to railway employees. Panama R. Co. v. Johnson construed the benefits of the Jones Act to be available in admiralty, and ruled further that the venue provisions of the Act must be complied with in suits thereunder.

In the Pinar Del Rio case, the Supreme Court reiterated the position taken by it in the Panama case. In conformity with the latter decision, it ruled that the Jones Act might be availed of in admiralty but subject to all the limitations provided by that Act; that for example, on the admiralty side there cannot be an in rem proceeding under the Jones Act, since that Act provided only for suits in personam. And in this connection the court, in the Pinar Del Rio case, which again, it is stressed, was in admiralty, pointed out that such in personam actions, whether at law or in admiralty, could only be brought in the district in which the defendant employer resided or had his principal place of business. No more succinct statement of these two principles can be had than that made by the court itself when it said: "Section 33 brings into our maritime law the provisions of certain statutes which define the liability of masters to employees originally intended to be enforced in actions at law. They imposed personal liability, and gave no lien of any kind. The statute which extended them to seamen expressly provided that the employer might be sued only in the district where he resides or has his principal office."

In the Pomona case, supra, a suit in personam was filed in admiralty and service was obtained by writ of foreign attachment. The respondent filed a special appearance and asserted that it was not a resident of nor had its principal place of business in the district. The court there ruled, citing the Pinar Del Rio case, that venue must be in the district of residence or principal place of business of the employer and jurisdiction cannot be obtained by writ of attachment in some other district. The court said: "This action being under the new rules, no lien being given against the ship by the Jones Act

upon which the claim of right is based, the jurisdiction, under the new rules, being given to the district of the residence of the owner, or principal place of business, the court is without power to entertain jurisdiction against the ship, no lien being given, and no power to entertain jurisdiction of the action under the new rules because the residence of the owner is not in the district, nor is his place of business."

■ We subscribe to this ruling. Under the provisions of the Jones Act the venue lies only in "the district in which the defendant employer resides or in which his principal office is located". It must be noted that Sec. 33 does not contain the provision "or in which he shall be found" which existed in the Judiciary Act of 1875, 18 Stat. 470, and which was eliminated by the Act of 1887 under Section 51 of the Judiciary Code, 28 U.S.C.A. § 112.

The venue requirement of the Jones Act would not be complied with, even should service of the writ be made on a defendant "found" in the district, and logically cannot be complied with by service (by foreign attachment) on any property belonging to the defendant "found" in the district. It would make a mockery of the provision, that the defendant must reside or have his principal office in the district, if the courts would permit service by foreign attachment, as in the instant case. Assuredly, if the mere presence of the defendant in the district is not enough, service on his property in the district is not enough. The law will not countenance accomplishment by indirection of that which is directly prohibited.

■ It may be further observed that under the Jones Act there exists a three-year statute of limitations which the courts repeatedly have ruled is inflexible and controlling.[4] There is no statute of limitations in personal injury cases on the admiralty side and although the courts, by analogy, adopt the local state statute of limitations governing personal injury cases, they nevertheless exercise liberal discretion in all instances.[5]

■ Thus, whether an action under the Jones Act be at law or in admiralty, the three-year statute of limitations applies, and the mere fact that it is in admiralty does not permit the court to disregard the three-year statute and to pursue the policy in effect in admiralty actions under the Jones Act. This is further evidence of the fact that resort to the Jones Act on the admiralty side does not render inapplicable the provisions of the Jones Act, and further negatives the view of the libellant that once in admiralty all of the attributes of an admiralty proceeding prevail.

Apart from precedent, it should be noted that the phrase "in such action", employed in the venue provisions of the Jones Act, appears three times in the section under consideration. In the construction thereof, it is reasonable to suppose that Congress intended that these words have the same meaning in all three places. Since the Supreme Court, in the Panama case, decided that the language "in such action" was intended to include suits in admiralty as well as actions at law, it must follow that this interpretation must be given to the phrase when found in the venue provisions of the Act. The view of the McDaniel case that the phrase should be construed broadly to include suits in admiralty when used in the first sentence of Section 33 of the Merchant Marine Act of 1920 but limited to actions at law when employed in the second sentence (relating to venue) is most difficult to comprehend and, as noted previously, is predicated upon a misconstruction of the holding in the Panama case. In brief, a logical construction of the language of the statute constrains the conclusion that the seaman must bring his libel in the forum designated by the Act.

The Supreme Court aptly summarized the situation in the Pinar Del Rio case when it stated: "Seamen may invoke, at their election, the relief accorded by the old rules against the ship, or that provided by the new [the Jones Act] against the employer. But they may not have the benefit of both."

■ We are of the opinion that the Supreme Court, in both the Panama and Pinar Del Rio cases, has ruled that, while the injured seaman may elect to proceed under the "new rules" (the Jones Act) or under the "old rules" (admiralty remedies as they existed prior to the Jones Act)

---

[4] Kirby v. South Atlantic S. S. Co., D. C., 25 F.Supp. 477; Oliver v. Calmar S. S. Co., 33 F.Supp. 356, decided by this court, March 6, 1940.

[5] Stampalia v. Murphy, D.C., 34 F.2d 660; The Southerner, D.C., 30 F.Supp. 259.

that if the seaman elects to proceed under the "new rules" he is bound by all of the "new rules" whether action is instituted on the law side or in admiralty.

For the reasons stated, we grant respondent's motion to strike from the libel all claims or allegations related to or founded upon the provisions of the Jones Act and to limit libellant at the trial to his remedies under the general maritime law.

Krusen, Evans & Shaw, of Philadelphia, Pa., for defendants.

Before KIRKPATRICK, WELSH, KALODNER, and BARD, District Judges.

KALODNER, District Judge.

The motion to strike is granted.

See opinion filed this day in William H. Brown v. C. D. Mallory & Company et al., D.C., 34 F.Supp. 541.